IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STACEY LOIBL, individually and as
Special Administrator of the Estate of
Wayne Richard Loibl,

        Plaintiff,                               OPINION and ORDER

    v.                                               22-cv-092-wmc

DAVIS-INTERNATIONAL, LLC,

        Defendant.

---

This case arises out of a fatal accident that occurred while the husband of plaintiff Stacey Loibl, Wayne Loibl ("Loibl" or "Wayne"), was operating an industrial winder machine manufactured by defendant Davis-International, LLC ("Davis-Standard"). Plaintiff sued defendant in her individual capacity and as special administrator of the estate of her late husband, Wayne, raising negligent and strict liability claims for: design, manufacturing, and installation defects; failure to warn; and breach of express and implied warranties.[1]

Davis-Standard has moved for partial summary judgment on plaintiff's warranty and failure to warn claims only. Plaintiff does not oppose dismissal of the warranty claims, so defendant's motion will be granted as to all of those claims. However, because there

---

[1] Diversity jurisdiction is present under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse. Specifically, plaintiff is a citizen of Wisconsin, the decedent was a citizen of Wisconsin, and defendant is a citizen of Delaware and Connecticut.

remain genuine disputes of material fact, defendant's motion will be denied as to plaintiff's failure to warn claim.

## UNDISPUTED FACTS[2]

At the time of the accident, Wayne Loibl was employed as an operator for Berry Global, Inc., a manufacturing company that makes plastic film products and operates approximately 270 plants worldwide. Loibl worked in the Chippewa Falls plant and, at the time of the accident, he was operating a Davis-Standard winder on a production line for thin plastic film, winding the film onto large cores, which were eventually delivered to Berry Global's customers.

Berry Global had purchased the subject winder directly from Davis-Standard sometime before July 2013. At the time, Berry Global had extensive experience with industrial winders, operating at least a dozen other plants that produced the same kind of this plastic film. This winder was slightly different from any other owned by Berry Global, however, in that it had a "carriage-formed roll changer" that was used in threading plastic film onto the winder.

When Berry Global purchased the subject winder, a Davis-Standard representative came to the plant and provided training to operators of the machine.[3] Among other things,

---

[2] The following facts are drawn from the parties' proposed findings of facts and responses, and are undisputed except where noted.

[3] Defendant states that Berry Global could also have purchased a "training package" for the winder, but cites no evidence showing that such a package existed or what it would have entailed. Instead, defendant cites only the deposition of Berry Global's corporate representative, who actually testified that Davis-Standard provided training on the winder, but acknowledged that no "training package" was purchased. (Leitsch Dep. (dkt. #49) at 132.)

the Davis-Standard representative ensured that the winder was functioning properly, trained Berry Global's operators and maintenance personnel on the machine parts and control panels, and demonstrated how to start the machine, change the speed and trouble-shoot potential problems. He also showed the workers the winder's operating manual. Finally, he observed Berry Global's workers operate the machine to ensure that it worked properly and they knew how to use it.

After this initial training, Berry Global relied on its own on-the-job training of other employees who would operate the winder, and also developed its own standard operating procedures for the production line on which the winder was placed. At summary judgment at least, the record does not disclose whether Loibl was present for the initial Davis-Standard training or learned to operate the winder through later, on-the-job training only. In any event, Loibl operated the winder regularly, and he was eventually promoted to train others on use of the winder. An operating manual was also available to Loibl, which he reviewed on occasion.[4] However, there is no evidence in the record regarding whether he specifically reviewed the warning sections of that manual.

At the time of the accident, Loibl was in the process of threading the subject winder. The parties dispute whether he was following a standard operating procedure in doing so, but it is undisputed that during the threading process, Loibl stepped on a pressure-sensitive

---

[4] Defendant asserts that Loibl never saw the operating manual, but solely cites as support the deposition testimony of Berry Global's corporate representative, who stated that the company does not keep a record of who has seen the manual. (Leitsch Dep. (dkt. #49) 123–25.) In contrast, plaintiff submitted a declaration from Loibl's coworker stating that the manual was available to the winder trainers, including Loibl, and that Loibl reviewed it from time to time. (Kane Dec. (dkt. #57) ¶ 8.)

3

safety mat that was floor-mounted between the spindles and the roll changer of the machine.  According to the Davis-Standard safety manual, stepping on the mat should have stopped the spindle drives and prevented further movement of the roll changer carriage.  There were no warnings on the machine or in the safety manual indicating that the safety mat may not shut off the machine or fail to prevent movement of the roll changer carriage.

However, when Loibl stepped on the mat, the roll changer carriage swung toward him, hitting his head against another part of the machine and causing his death.  In viewing the video footage of the accident, Berry Global employees familiar with the winder were surprised that the safety mat would trigger movement of the roll changer carriage.  Rather, they had been trained, and believed, that stepping on the mat was a "safe spot" and would prevent movement of the roll changer carriage.

OPINION

Plaintiff asserts several claims against defendant, but the only claims at issue in this motion concern negligence and strict liability for failure to warn.  In particular, plaintiff contends that defendant should have provided warnings about the potential for stored energy in the roll changer carriage and the limitations of the safety mat.  To prevail on a failure to warn claim, whether under a strict liability or negligence theory, plaintiff must establish four elements:  (1) existence of a duty to warn; (2) proof of a failure to warn adequately; (3) proof of causation injury; and (4) actual damages resulted from the injury.  *Kessel v. Stansfield Vending, Inc.*, 2006 WI App 68, ¶ 15, 291 Wis. 2d 504, 714 N.W.2d

206. Defendant argues that plaintiff cannot show (1) the existence of a duty to warn or (2) causation.

First, defendant argues that Berry Global was a sophisticated user of industrial winders and had extensive knowledge of potential hazards, as well as took responsibility for training its employees on the safe operation of the winder. In certain situations, a supplier has "no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product." *Haase v. Badger Mining Corp.*, 2003 WI App 192, ¶ 19, 266 Wis. 2d 970, 669 N.W.2d 737. Relying on this "sophisticated user defense," Davis-Standard argues that Berry Global, not defendant, had the ultimate duty to warn and train its employees on the safe usage of the winder.

However, there are genuine factual disputes regarding this issue. Specifically, if the evidence is viewed in plaintiff's favor, a jury could find that: the roll changer carriage made the winder at issue different from other winders operated by Berry Global; Berry Global and Loibl relied on training from a Davis-Standard representative and the Davis-Standard operating manual to operate the winder; and Berry Global was unaware of the specific hazard that actually caused the accident at issue in this case. On this record, the court cannot conclude as a matter of law that defendant had no duty to warn operators because Berry Global was a sophisticated user.

Second, defendant challenges plaintiff's ability to prove causation. To prove causation on a failure to warn claim, plaintiff must show that if properly warned, Loibl would have altered his behavior and avoided injury. *See Kurer v. Parke, Davis & Co.*, 2004

5

WI App 74, ¶ 25, 272 Wis. 2d 390, 679 N.W.2d 867.  Defendant argues that plaintiff cannot show that Loibl would have read or heeded any warnings that would have prevented his accident and death, because there is no proof that Loibl read or followed the warnings that were in the operating manual.

However, plaintiff submitted a declaration from another winder operator and coworker of Loibl stating that:  the machine operating manual was available to Loibl as a trainer; Loibl referenced it from time to time as needed; Loibl was "very safety oriented"; and if Loibl had been properly warned about the risks, including "that the safety mat may not prevent the movement of the roll changer carriage, he would have altered his behavior." (Kane Dec. (dkt. #57) ¶¶ 9–10.)  Even if this last clause were deemed speculative, this evidence is sufficient to raise a genuine factual dispute regarding whether Loibl would have heeded a different warning about the risks of operating the winder.  Accordingly, summary judgment will be denied.

ORDER

IT IS ORDERED that defendant Davis-Standard's motion for partial summary judgment (dkt. #50) is GRANTED IN PART as to plaintiff's warranty claims and DENIED IN ALL OTHER RESPECTS.

Entered this 17th day of October, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge